**UNITED STATES of America**

v.

**Scott Frederick KAPP, Defendant**

**United States of America**

v.

**Elmer Alvin Duncan, Defendant.**

**Nos. 1:06–CR–389, 1:06–CR–422.**

United States District Court,
M.D. Pennsylvania.

May 16, 2007.

Martin C. Carlson, U.S. Attorney's Office, Harrisburg, PA, for United States of America.

## MEMORANDUM

KANE, Chief Judge.

Now before the Court are motions to dismiss indictments in two separate criminal actions: *United States v. Kapp* and *United States v. Duncan.* Defendants have moved to dismiss indictments for violations of 18 U.S.C. § 2250, and have separately challenged the applicability and constitutionality of that statute on similar bases. For reasons of judicial economy, the Court will address both motions in a single order. For the reasons that follow, Defendants' motions will be granted.

## I. BACKGROUND

On November 15, 2006, Defendant Scott Frederick Kapp was charged in a three-count Grand Jury Indictment with violations of 18 U.S.C. § 2250(a) and 42 U.S.C. § 14072(i) for failure to register as a sex offender (Counts I and II), and with a violation of 18 U.S.C. § 228 for failure to pay past-due child-support obligations (Count III). On December 13, 2006, Defendant Elmer Alvin Duncan was separately charged with the same three offenses. Both Defendants subsequently entered pleas of not guilty and moved to dismiss Count I of their respective indictments.

In their motions to dismiss, Defendants challenge the application and constitutionality of 18 U.S.C. § 2250. That statute imposes criminal liability on persons who are required to register as sex offenders, knowingly fail to comply with federal registry requirements, and who have been convicted of a sex offense under federal law or travel in interstate commerce. Defendants argue that at the time of their Indictments, the statute had no application to them. Alternatively, they argue that § 2250 is unconstitutional in that it violates the nondelegation doctrine, as well as the Ex Post Facto, Due Process, and Commerce Clauses. Neither this Court nor any court within the Third Circuit has had occasion to interpret § 2250 or to consider challenges to its constitutionality. Indeed, only four district courts have considered the statute, with varying results.[1] The Court will briefly describe the facts alleged in support of the indictments, discuss the statutory background leading up to § 2250, and then turn to Defendants' sub-

---

1. *Compare United States v. Smith*, 481 F.Supp.2d 846 (E.D.Mich.2007) (holding that § 2250 did not apply retroactively and that § 2250 violates the Ex Post Facto Clause) *with United States v. Templeton*, No. 06–291, 2007 WL 445481, 2007 U.S. Dist. LEXIS 8930 (W.D.Okla. Feb. 7, 2007) (finding that SORNA covered individuals convicted before July 27, 2006, and finding no violation of the Ex Post Facto, Due Process, and Commerce Clauses); and *United States v. Madera*, 474 F.Supp.2d 1257 (M.D.Fla.2007) (finding no violation of the nondelegation doctrine, applying the law retroactively, finding no violation of the Ex Post Facto, Due Process, or Commerce Clauses). *See also United States v. Manning*, No. 06–20055, 2007 WL 624037, 2007 U.S. Dist. LEXIS 12932 (W.D.Ark. Feb.23, 2007) (following *Madera* and *Templeton*); *United States v. Markel*, 2007 WL 1100416, 2007 U.S. Dist. LEXIS 27102 (W.D.Ark. Apr. 11, 2007) (same).

538

stantive arguments in support of their motions.

### A. Factual Background

#### 1. Scott Kapp

On January 20, 1998, Defendant Scott Frederick Kapp appeared before the York County Court of Common Pleas and entered a plea of *nolo contendere* to sexual assault and aggravated assault, and was sentenced to two to four years incarceration. While in custody on November 9, 2001, and then again on January 17, 2002, Kapp registered as a sex offender with the Pennsylvania State Police pursuant to 42 Pa. Cons.Stat. § 9795.2. After his release from prison, Kapp traveled to Florida in the fall of 2006, where he had accepted employment. The Government alleges that Kapp failed to register as a sex offender in Florida. On November 16, 2006, Kapp was arrested in Fort Lauderdale, Florida, on the within indictment alleging failure to update his sex-offender registration and failure to pay past-due child-support obligations.

#### 2. Elmer Duncan

In 1990, Elmer Alvin Duncan was convicted of rape, statutory rape, indecent assault, and corruption of the morals of a six-year-old girl. On September 10, 1990, Duncan was sentenced to a term of imprisonment of seven-and-one-half to fifteen years. On January 18, 2005, and then upon his release in February 2005, Duncan registered as a sex offender. In January 2006, the Pennsylvania State Police mailed an address verification form to Duncan's reported address. Duncan did not return the form. At some point during the spring or summer of 2006, Duncan traveled to Florida, where he resided for several months. In December 2006, Duncan was arrested in Florida on the within indictment alleging failure to update his sex-offender registration and failure to pay past-due child-support obligations.

### B. Statutory Background

The history of the challenged statute, 18 U.S.C. § 2250, is rooted in three legislative acts: (1) the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Jacob Wetterling Act"), Pub.L. 103–322, tit. XVII, 108 Stat. 2038, as amended, 42 U.S.C. § 14071; (2) the Pennsylvania Registration of Sex Offenders Act ("Megan's Law"), 42 Pa. Cons.Stat. § 9791 *et seq.;* and (3) the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub.L. No. 109–248, 120 Stat. 587 (2006). Defendants' challenge to § 2250 is examined in the context of these statutes.

#### 1. Jacob Wetterling Act

On September 13, 1994, President Clinton signed into law the Jacob Wetterling Act. The Jacob Wetterling Act is a federal funding statute that "condition[ed] certain federal law enforcement funding on the States' adoption of sex offender registration laws and set[ ] minimum standards for state programs." *Smith v. Doe,* 538 U.S. 84, 89–90, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). These sex-offender registration laws and state programs are commonly referred to as "Megan's Laws," and have been enacted on a state-by-state basis throughout the country. *Id.* By appropriating federal funds to states in compliance with minimum federal standards, the Jacob Wetterling Act contemplated primarily state-based enforcement of sex-offender registries. As such, the Jacob Wetterling Act provided that "[a] person required to register under a State program established pursuant to this section who knowingly fails to so register and keep such registration current shall be subject to criminal penalties in any State in which the person has so failed," 42 U.S.C.

§ 14071(c), but did not itself impose independent federal criminal liability for an individual who violated a state's Megan's Law.[2]

## 2. Pennsylvania's Megan's Law

On October 24, 1995, Governor Ridge signed into law Pennsylvania's Megan's Law. Under Pennsylvania's Megan's Law, an individual convicted of an offense enumerated in 42 Pa. Cons.Stat. § 9795.1[3] must register with the Pennsylvania State Police and provide information related to his current or intended residence, employment, and educational enrollment upon the release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or probation. 42 Pa. Cons.Stat. § 9795.2(a)(1). Additionally, the individual must inform the state police within 48 hours of any changes related the individual's residence, employment, or educational enrollment. *Id.* § 9795.2(a)(2). Finally, the individual must register within 48 hours with a new law enforcement agency after establishing residence in another state. *Id.* § 9795.2(a)(2.1). Should the individual fail to comply with these registration requirements, 18 Pa. Cons.Stat. § 4915 imposes criminal penalties with minimum penalties of at least two years depending on the offense.

## 3. Adam Walsh Act

On July 27, 2006, President Bush signed into law the Adam Walsh Act. Title I of the Act, which is at the core of this case, is referred to as the Sex Offender Registration and Notification Act ("SORNA"). At the time of signing, President Bush noted that SORNA "will greatly expand the National Sex Offender Registry by integrating the information in state sex offender registry systems and ensuring that law enforcement has access to the same information across the United States." President George W. Bush, Statement upon Signing H.R. 4472 (July 27, 2006), *as reprinted* in 2006 U.S.C.C.A.N. S35, S36. Like the Jacob Wetterling Act, SORNA conditions federal funds upon States' enforcement of sex-offender-registration programs. Unlike the Jacob Wetterling Act, though, SORNA creates an independent federal obligation on individuals convicted of a "sex offense" to register with a sex offender registry.[4] Of particular relevance to this case, § 141(a) of SORNA, codified at 18 U.S.C. § 2250(a), imposes criminal penalties of up to ten years imprisonment on individuals required to register under SORNA, who travel in interstate commerce, and knowingly fail to register or update their registration.[5]

2. The limited circumstances in which federal penalties existed are not relevant to this case. *See* 42 U.S.C. § 14072(i).

3. In its current form, registration is required under § 9795.1 after a conviction for any of the following offenses: kidnapping where the victim is a minor; luring a child into a motor vehicle; institutional sexual assault; indecent assault where the offense is graded as a misdemeanor of the first degree or higher; incest where the victim is under 18 years of age; prostitution and related offenses where the actor promotes the prostitution of a minor; obscene and other sexual materials and performances where the victim is a minor; sexu-

al abuse of children; unlawful contact with minor; sexual exploitation of children; rape; involuntary deviate sexual intercourse; sexual assault; aggravated indecent assault; and attempt of any of the above.

4. SORNA § 129 repealed the Jacob Wetterling Act, which will cease to be in effect either on July 27, 2009, or one year after software described in § 123 of SORNA is available, whichever is later.

5. Section 141(a) provides in full: (a) In general.—Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

## II. DISCUSSION

Both Kapp and Duncan have been indicted under § 141(a) of SORNA, 18 U.S.C. § 2250, and they now argue that the indictment must be dismissed. Specifically, they contend that at the time of their indictment, they were under no federal obligation to register under SORNA's registration statute, § 113 of SORNA, codified at 42 U.S.C. § 16913.[6] The Court agrees.

Generally, § 113(a) requires that a sex offender "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." On its face, § 113(a) establishes the general rule that sex offenders, as defined by SORNA,[7] must register and update that registration. Thus, by the statute's terms, § 113(a) requires all sex offenders to both register and update their registration.

Defendants do not take issue with the scope of § 113(a). However, Defendants argue that SORNA's registration requirement should be construed to apply only prospectively to those sex offenders who are convicted after SORNA's effective date of July 27, 2006. *I.N.S. v. St. Cyr*, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("A statute may not be applied

---

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

6. Section 113 provides the following:

(a) In General.—A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial Registration.—The sex offender shall initially register—(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the Registration Current.—A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial Registration of Sex Offenders Unable To Comply With Subsection (b).—The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

(e) State Penalty for Failure To Comply.—Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this title.

42 U.S.C. § 16913.

7. The term "sex offender" is defined in § 111(1) as "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). The term "sex offense" is in turn defined in § 111(5). *Id.* § 16911(5).

retroactively ... absent a clear indication from Congress that it intended such a result."); *Landgraf v. USI Film Products,* 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Defendants argue that § 113(d), which addresses sex offenders convicted before the Act's enactment, supports their analysis by making special provision for those offenders whose convictions pre-dated SORNA. Section 113(d) provides that:

> The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

According to Defendants, § 113(d) unequivocally authorizes the Attorney General to "specify the applicability" of SORNA retrospectively to offenders who, like Kapp and Duncan, were convicted of predicate sex offenses before SORNA's effective date of July 27, 2006. As such, Defendants argue that § 113(d) qualifies the registration requirements of § 113(a) to only prospective applicability until the Attorney General acted pursuant to § 113(d). Ultimately, the Attorney General exercised his authority under § 113(d) and issued an interim rule that makes it "indisputably clear that SORNA applies to sex offenders (as the Act defines that term) regardless of when they were convicted." Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8,894, 8,896 (proposed Feb. 28, 2007) (to be codified at 28 C.F.R. pt. 72).[8] However, the Attorney General's pronouncement did not issue until February 28, 2007—more than three months after Kapp's indictment and two months after Duncan's. Defendants therefore contend that SORNA did not apply to them as past offenders when they were indicted.

The Government rejects this argument out of hand. It argues that § 113(d) is completely unrelated to Defendants because they were already registered as sex offenders. According to the Government, the fact that Defendants' convictions predated SORNA has no bearing on whether they had an obligation under § 113(a) to update their registries. The Government's position finds support in the title of § 113(d), which reads "Initial Registration of Sex Offenders Unable to Comply With Subsection (b)." Indeed, based on the subsection's title alone, the United States District Court for the Western District of Oklahoma in *United States v. Templeton* adopted the view that § 113(d) applies only to past offenders who are unable to initially register as sex offenders. No. 06–291, 2007 WL 445481, at *4, 2007 U.S. Dist. LEXIS 8930, at *13 (W.D.Okla. Feb. 7, 2007) ("The Court finds that this title clearly indicates that this subsection only applies to individuals who were unable to

---

**8.** The interim rule stated that its purpose was promulgated to "specify [the] scope of application for SORNA, regardless of whether SORNA would apply with such scope absent this rule, in order to ensure the effective protection of the public from sex offenders through a comprehensive national system for the registration of such sex offenders." 72 Fed.Reg. at 8,896. The regulation stated that it does not "address the full range of matters that are within the Attorney General's authority under section 113(d), much less to carry out the direction to the Attorney General in section 112(b) to issue guidelines and regulations to interpret and implement SORNA as a whole." *Id.* Moreover, the rule indicated that the issue of the retroactive applicability of SORNA's registration requirement "is of fundamental importance to the initial operation of SORNA, and to its practical scope for many years, since it determines the applicability of SORNA's requirements to virtually the entire existing sex offender population." *Id.*

initially register as a sex offender."). Furthermore, the Government's position is somewhat strengthened by the fact that the second clause of § 113(d) speaks to the requirements of § 113(b), which relates to the timing of initial registration.

Nevertheless, a careful reading of § 113(d) reveals that its reach extends beyond establishing the means by which unregistered sex offenders must first register. Section 113(d) comprises two clauses. The first clause, as already discussed, authorizes the Attorney General to "specify the applicability" of SORNA to past offenders. The second clause, authorizes the Attorney General to promulgate regulations related to the registration of sex offenders under SORNA. Although the first clause speaks to "sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction," the second clause provides authority to promulgate regulations "for the registration of any such [previously convicted] sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." The words "any such" and "other categories" in the second clause indicate that § 113(d) contemplates two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b). Significantly, the first clause of § 113(d), which addresses SORNA's applicability, only covers the first group: past offenders.[9] Therefore, when the two clauses are read in conjunction, the first clause of § 113(d) unambiguously provides the Attorney General with the authority to define the retrospective applicability of SORNA's registration requirements to past offenders.

The Attorney General did not exercise the authority given to him under § 113(d) until February 28, 2007, months after the Defendants' indictments. When the Attorney General did exercise the authority, he stated that "[t]he current rulemaking serves the ... immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA." *Applicability of the Sex Offender Registration and Notification Act*, 72 Fed. Reg. at 8,896. Nevertheless, Defendants' indictments occurred in the brief window during which SORNA's scope remained undefined as to past offenders, and because § 113(d) required the Attorney General to animate SORNA's provisions to previously convicted offenders, SORNA did not apply to Defendants at the time of indictment.

The Court agrees with the Government that SORNA operates to "forbid unregulated interstate flight by registered sex offenders" (United States' Br. 3), but the Court cannot ignore Congress's decision to

---

9. By way of comparison, § 113(d) of the Children's Safety Act of 2005 (which passed through the House of Representatives a year earlier and contained many of the same provisions as SORNA) contained the single clause: "The Attorney General shall prescribe a method for the registration of sex offenders convicted before the enactment of this Act or its effective date in a particular jurisdiction." Children's Safety Act of 2005, H.R. 3132, 109th Cong. § 113(d) (2005). Under that legislation, the law would unambiguously apply to all offenders irrespective of when they were convicted, and the Attorney General would have no authority to spec-ify the extent to which the law could apply to past offenders. Rather, the Attorney General's role would be limited to specifying the manner by which past offenders could register. In contrast, however, § 113(d) as passed in SORNA places authority in the hands of the Attorney General to "specify" how and *whether* SORNA should apply to past offenders. For example, the Attorney General could conceivably promulgate a rule providing that offenders convicted before January 1, 2000, would have no obligations under SORNA. Under the scheme envisioned by the Children's Safety Act, the Attorney General would have no such express authority.

authorize the Attorney General to extend SORNA's requirements to those individuals convicted before July 27, 2006. Now that the Attorney General has acted under § 113(d), there is no doubt that SORNA's registry requirements, and the punishment that accompanies failure to fulfill such requirements, would apply under 18 U.S.C. § 2250.[10] But because Defendants' indictment fell within the period between the SORNA's passage and the Attorney General's actions under § 113(d), the Court finds that SORNA did not apply to Kapp on November 15, 2006, or to Duncan on December 13, 2006. Accordingly, Defendants' motions to dismiss Count I of their indictments will be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss Count I of their indictments. An appropriate order follows.

### ORDER

AND NOW, on this 16th day of May, 2007, upon due consideration by the Court and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendant Scott Frederick Kapp's motion to dismiss Count I of the Indictment (Doc. No. 24) is **GRANTED. IT IS FURTHER ORDERED** that Defendant Elmer Alvin Duncan's motion to dismiss Count I of the Indictment (Doc. No. 24) is **GRANTED.**

---

**10.** Because the Court's ultimate conclusion is that SORNA by its own terms did not apply to Defendants at the time of indictment, the Court is constrained to avoid Defendants' substantial arguments that Congress impermissibly delegated its power to establish retroactive laws in violation of the nondelegation doctrine, or that Defendants' indictments violated the Ex Post Facto, Due Process, or Commerce Clauses. *See, e.g., Public Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 465–68, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) ("Our reluctance to decide constitutional issues is especially great where, as here, they concern the relative powers of coordinate branches of government.").