# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3515

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Southern District of Iowa. |
| David Louis May, | * |
| | * |
| Appellant. | * |

_____

Submitted: May 13, 2008
Filed: July 31, 2008

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

_____

RILEY, Circuit Judge.

David Louis May (May) appeals the district court's[1] denial of May's motion to dismiss an indictment charging him with one count of failure to register as a sex offender in violation of 18 U.S.C. § 2250(a), the Sex Offender Registration and Notification Act (SORNA).[2] The district court found (1) SORNA applies to May, (2) SORNA's retroactive application does not violate the ex post facto clause,

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[2]Codified at 42 U.S.C. §§ 16901-16991.

(3) Congress did not improperly delegate legislative responsibility to the Attorney General in violation of the non-delegation doctrine, (4) application of SORNA to May did not violate May's due process rights, and (5) Congress's enactment of SORNA was a permissible exercise of its authority under the commerce clause. We affirm.

## I.    BACKGROUND[3]

In 1994, May pled guilty in Oregon to misdemeanor sexual conduct. The Oregon sex offender law required May to register as a sex offender and to keep his registration updated. See O.R.S. § 181.595. May first registered on June 26, 2000. May thereafter moved to Maryland, and both failed to update his Oregon registration, pursuant to O.R.S. § 181.596, and failed to register as a sex offender in Maryland, as required by Maryland law, see Md. Code Ann. Crim. Pro. §§ 11-701 to 11-705.

May was arrested on June 19, 2002, and later convicted for failing to register in Maryland as a sex offender. On July 11, 2002, May registered in Maryland, but May again failed to update his registrations after he was released from jail on November 6, 2002. May returned to Oregon, failed to update his registration there, and, on December 21, 2004, was convicted for failing to register as a sex offender in Oregon. May then updated his registration in Oregon, which he kept current through November 8, 2006. On November 18, 2006, May relocated to Iowa, and neither updated his registration in Oregon, nor registered as a sex offender under Iowa law. See Iowa Code § 692A.1-.16.

On June 20, 2007, May was indicted under SORNA for being a sex offender who traveled in interstate commerce and knowingly failing to register and update his registration. May moved to dismiss the indictment. The district court rejected each

---

[3]Many of the facts are not available in the direct record on appeal. Because the parties agree on all of the material facts, we primarily rely on the facts set forth in the district court's thorough, well-reasoned opinion.

of May's arguments, and denied May's motion.  May pled guilty, but reserved his right to appeal the district court's order denying his motion to dismiss.  May now appeals.

## II.    DISCUSSION

The parties agree none of the issues in this appeal involve factual disputes. Each issue involves either statutory interpretation of SORNA or constitutional challenges to SORNA's applicability.  We therefore review each issue de novo.  See Royal v. Kautzky, 375 F.3d 720, 722 (8th Cir. 2004) ("We review claims of constitutional error and issues of statutory construction de novo." (internal citation and quotation marks omitted)).

### A.    Applicability of SORNA

May contends SORNA does not apply to him because his travel in interstate commerce, although occurring after SORNA's enactment, occurred before the Attorney General issued an interim ruling designating the applicability of SORNA to offenders convicted before SORNA's date of enactment.  SORNA provides, in pertinent part:

**(a) In general**
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

**(b) Initial registration**
The sex offender shall initially register—
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

**(c) Keeping the registration current**
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

**(d) Initial registration of sex offenders unable to comply with subsection (b) of this section**
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 [the enactment of this Act] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Section 16913(a)-(d).

On February 28, 2007, the Attorney General issued an interim rule effective February 28, 2007, which states in pertinent part:

[T]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act.

72 Fed. Reg. 8894 (to be codified at 28 C.F.R. § 72.3).

During the pendency of this appeal, the Eleventh Circuit Court of Appeals issued an opinion interpreting § 16913(d) and SORNA's retroactivity. See United States v. Madera, 528 F.3d 852 (11th Cir. 2008). Madera involved a slightly different factual background than we have before us. Unlike May, the defendant in Madera was prosecuted and convicted before the Attorney General issued the interim rule. Id. at

857.  Because the Eleventh Circuit's reasoning plainly impacts May's case, we will hereafter address <u>Madera</u>.  Before doing so, it will be useful to discuss the various manners in which district courts have interpreted § 16913(d) in cases preceding <u>Madera</u>.

In the interest of brevity, we discuss only a few demonstrative district court cases, which interplay with each other.  In <u>United States v. Muzio</u>, No. 4:07-CR-179, 2007 WL 2159462 (E.D. Mo. July 26, 2007), upon which May relies, the defendant, like May, was convicted before SORNA's enactment, and traveled to another state (Missouri) after SORNA's passage, but before the Attorney General issued the interim regulation.  <u>Id.</u> at *2.  The <u>Muzio</u> court concluded § 16913(d) was unambiguous, and found:

> Under the plain language of the statute, the registration requirements of [§ 16913(a)] have only prospective applicability until the Attorney General acted pursuant to [§ 16913(d)].  Section [16913(d)] unequivocally authorizes the Attorney General to "specify the applicability" of SORNA to offenders who, like Muzio, were convicted of predicate sex offenses before SORNA's effective date of July 27, 2006.

<u>Id.</u> at *3.  The <u>Muzio</u> court discounted the title of § 16913(d), noting, "Only the title raises any question about § [16913(d)]'s meaning.  But a title does not make a statute ambiguous when the words are plain: 'section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity.'" <u>Id.</u> (quoting <u>Minnesota Transp. Regulation Bd. v. United States</u>, 966 F.2d 335, 339 (8th Cir. 1992)).  The <u>Muzio</u> court adopted the reasoning of <u>United States v. Kapp</u>, 487 F.Supp.2d 536 (M.D. Pa. 2007):

> Section [16913(d)] comprises two clauses.  The first clause . . . authorizes the Attorney General to "specify the applicability" of SORNA to past offenders.  The second clause authorizes the Attorney General to

promulgate regulations related to the registration of sex offenders under SORNA. Although the first clause speaks to "sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction," the second clause provides authority to promulgate regulations "for the registration of any such [previously convicted] sex offenders and for other categories of sex offenders who are unable to comply with subsection (b)." The words "any such" and "other categories" in the second clause indicate that § [16913(d)] contemplates two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b). Significantly, the first clause of § [16913(d)], which addresses SORNA's applicability, only covers the first group: past offenders. Therefore, when the two clauses are read in conjunction, the first clause of § [16913(d)] unambiguously provides the Attorney General with the authority to define the retrospective applicability of SORNA's registration requirements to past offenders.

Muzio, 2007 WL 2159462, at *4 (quoting Kapp, 487 F.Supp.2d at 542).

In United States v. Roberts, 2007 WL 2155750 (W.D. Va. July 27, 2007), the district court took a position directly opposite from that taken in Muzio and Kapp. Rather than looking only at § 16913(d), the Roberts court looked at the entirety of the statute and found:

The bulk of the statute does not make a distinction between those convicted before the Act and those convicted after. It imposes its requirements on "sex offenders," without qualification. The proper distinction for these purposes is between those who are *currently registered*, and those who are *not*. Those currently registered are unambiguously required by subsections (a) and (c) to keep their registrations current. Those not currently registered must register in accordance with the "initial registration" provisions in subsection (b). Subsection (d), *as its title reveals*, is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with (b) because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule. In this

subsection, Congress did distinguish between convictions from before and after the enactment of the act. But it is clear from the context that their intent was not to exempt all sex offenders convicted before July 2006 from registration requirements, but rather to avoid the obvious injustice of requiring such offenders to do the impossible by registering within 3 days of their years-old convictions.

Roberts, 2007 WL 2155750, at *2 (some emphasis added). The Roberts court further "bolstered" its interpretation by relying on legislative history. Id.

As the Muzio court did, the Eleventh Circuit expressly adopted the reasoning of Kapp, saying:

We read the text [of § 16913(d)], as did the Kapp court, among others, as being comprised of two clauses. The first gives the Attorney General authority to determine whether SORNA applies retroactively to all sex offenders, and the second gives the Attorney General authority to promulgate rules regarding initial registration.

Madera, 528 F.3d at 858. The Eleventh Circuit reasoned:

The plain language of the statute makes clear that Congress gave only the Attorney General the authority to determine SORNA's retroactivity. The statute clearly says, "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction . . . ." 42 U.S.C. § 16913(d). Congress's use of the word "shall" indicates that Congress was issuing a directive to the Attorney General specifically to make the determination.

Id. at 857 (citation omitted). We respectfully disagree. Although the word "shall" indicates a congressional directive, the question remains as to what § 16913(d) was specifically directing the Attorney General to regulate.

We recognize the Roberts court's interpretation suffers from a significant flaw. The Roberts decision relies on § 16913(d)'s title without first finding the text of the statute ambiguous. See Minnesota Transp. Regulation Bd., 966 F.2d at 339. An alternate approach interpreting the statute is well articulated by the court in United States v. Beasley, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007). In Beasley, the Northern District of Georgia first analyzed SORNA's plain text, and found it ambiguous. Id. at *5-6. The court then included the title of subsection (d) in its consideration. Id. at *6. The Beasley court explained:

> Contrary to the courts' findings in Muzio and Kapp, . . . the text of § 16913(d), when considered in isolation and out of context, *is* ambiguous. An additional possible meaning of subsection (d) is that past offenders ("offenders convicted before the enactment of this Act") are included *within* (and not a separate group *from*) the broader category of "sex offenders who are unable to comply with subsection (b)," and it is only as to those "sex offenders who are unable to comply with subsection (b)" that the Attorney General was given authority under subsection (d) to issue clarifying regulations. In light of this ambiguity, the title of subsection (d) should be considered. . . . Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved, and it becomes clear that subsection (d) only applies to initial registration. This construction makes sense when one considers that a sex offender convicted before July 27, 2006, would, in many cases, be unable to comply with the initial registration requirements of SORNA because the time limits for initial registration would have already passed when SORNA was enacted. Accordingly, the [court] agrees with [the] analysis from Roberts.

Id. (internal citation omitted) (emphasis added).

We find both the Beasley court's approach, and its accompanying interpretation, consistent with our statutory construction rules and eminently reasonable. We thus respectfully disagree with the Eleventh Circuit's adoption of the alternate reasoning of Kapp. See Madera, 528 F.3d at 858.

The "additional possible meaning of subsection (d)" the <u>Beasley</u> court describes is supported by the use of the statutory terminology "*other* categories of sex offenders who are unable to comply with subsection (b) of this section." Section 16913(d) (emphasis added). The use of this language indicates, as the <u>Beasley</u> court explained, the "offenders convicted before July 27, 2006 " are indeed included within the "other categories of sex offenders who are unable to comply with subsection (b) of this section." At the very least, this creates an ambiguity, and triggers the permissible reference to the title. See <u>I.N.S. v. National Center for Immigrants' Rights, Inc.</u>, 502 U .S. 183, 189 (1991) (restating "the title of a statute or section can aid in resolving an ambiguity in the legislation's text"). We hold the text of subsection (d) is ambiguous. When also considering § 16913(d)'s title and the overall design of SORNA, subsection (d) "is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with [subsection] (b) because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule." <u>Roberts</u>, 2007 WL 2155750, at *2. May is in the same position as the defendant in <u>Roberts</u>:

> [May], a sex offender who was registered prior to the enactment of SORNA, was required to keep his registration current in accordance with its terms. Because he had first registered [] before SORNA, subsections (b) and (d), concerned exclusively with *initial* registration, do not apply to him. Thus he is a person "required to register under [SORNA]" and subject to the penalties imposed by 18 U.S.C. [§] 2250(a)."

<u>Id.</u> (emphasis in the original).

The Eleventh Circuit contended its contrary "reading of the statute [was] supported by the fact that the Attorney General in fact exercised his full discretion to determine its retroactivity when he issued the interim rule." <u>Madera</u>, 528 F.3d at 858. We again respectfully disagree. The comments supporting the Attorney General's interim rule contain an example completely in line with the interpretation we adopt herein. See 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007). The Attorney General did not

believe a rule was even needed to confirm SORNA's applicability to defendants such as May. See id. at 8896. Rather, the Attorney General only promulgated the rule as a precautionary measure to "*foreclose*[] such claims [as May's] by making it *indisputably clear* that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted." Id. (emphasis added). SORNA applies to May.

### B.    Ex Post Facto Clause

May next argues application of SORNA to his case violates the ex post facto clause. The district court determined there was no ex post facto violation, and we agree.

The district court predominantly relied on the United States Supreme Court's decision in Smith v. Doe, 538 U.S. 84, 89-90, 105-06 (2003), in which the Supreme Court held the Alaska Sex Offender Registration Act was civil and nonpunitive, and thus its retroactive application did not violate the ex post facto clause. We recognize, as did the district court in Beasley, "the issue is very different [than in Smith]. It is whether imposing criminal penalties for traveling to and residing in a new state and not registering as a sex offender in that new state at a time before the Attorney General issued his interim regulation violates the Ex Post Facto Clause." Beasley, 2007 WL 3489999, at *3. If a defendant, like May, is not even subject to the Attorney General's regulation under § 16913(d) (which we have already determined), then neither the promulgation of the regulation nor § 16913(d) would present an ex post facto clause problem in such a case. To the extent May challenges the *overall* applicability of SORNA, the ex post facto framework outlined in Smith leads to the conclusion SORNA does not violate the ex post facto clause.

In analyzing an ex post facto violation, courts must first determine whether "the legislature meant the statute to establish 'civil' proceedings." Kansas v. Hendricks, 521 U.S. 346, 361 (1997). If Congress intended SORNA to impose punishment for a pre-existing crime, the statute violates the ex post facto clause. See Smith, 538 U.S.

at 92. Conversely, if it was Congress's intention "to enact a regulatory scheme that is civil and nonpunitive," courts must further examine "whether the statutory scheme is so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil." Id. (internal citation and quotation marks omitted).

To determine whether the statutory scheme at issue is punitive or regulatory, courts must determine whether Congress "indicated either expressly or impliedly a preference for one label or the other." Smith, 538 U.S. at 93. Congress stated its purpose in establishing a comprehensive national system for registration of sex offenders was "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C.A. § 16901. As was the case in Smith, SORNA's registration requirement demonstrates no congressional intent to punish sex offenders. Congress described SORNA as a public safety measure. See § 16901.

Even though Congress's intent "was to enact a regulatory scheme that is civil and nonpunitive," we must look further to see if the statutory scheme is so punitive that it negates Congress's intention to deem the act civil. See Smith, 538 U.S. at 92. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 92 (internal quotations omitted).

The only punishment that can arise under SORNA comes from a violation of § 2250, which punishes convicted sex offenders who travel in interstate commerce after the enactment of SORNA and who fail to register as required by SORNA. Congress clearly intended SORNA to apply to persons convicted before the Act's passage. The Act defines a sex offender as "an individual who *was* convicted of a sex offense." § 16911(1) (emphasis added). If SORNA did not apply to previously convicted sex offenders, SORNA would not serve Congress's stated purpose of establishing a "comprehensive national system" for sex offender registration. Section 16901. As applicable to May, the elements of § 2250 are: (1) being a sex

-11-

offender, (2) traveling in interstate commerce, and (3) failing to register or update a registration.  Although May became a sex offender by way of a conviction before enactment of SORNA, the first element merely identifies to whom the statute applies; it is not a triggering event.  Cf. United States v. Woods, 696 F.2d 566, 571-72 (8th Cir. 1982) (finding no ex post facto concern for a conviction for being a felon in possession of a firearm where there was no evidence the firearm traveled in interstate commerce after enactment of the statute because the interstate commerce element only defined the type of gun involved, and it was not a triggering event for the violation).  Section 2250 punishes an individual for traveling in interstate commerce and failing to register.  The statute does not punish an individual for previously being convicted of a sex crime.  There is no dispute May both traveled in interstate commerce and failed to update his registration after enactment of SORNA.  Thus, prosecuting May under § 2250 is not retrospective and does not violate the ex post facto clause.[4]

## C.    Non-Delegation Doctrine

May next argues SORNA's delegation of authority to the Attorney General under § 16913(d) violates the non-delegation doctrine.  Because May was not a person unable to register before SORNA's enactment and § 16913(d)'s authorizing the Attorney General to promulgate rules regarding its applicability does not even apply to him, May lacks standing to raise this challenge.  See United States v. Hays, 515 U.S. 737, 742-43 (1995) (outlining the minimum requirements to establish standing).

---

[4]May argues SORNA "dramatically increases the penalty for his interstate travel and failure to register or keep his registration current."  As the government correctly notes, previously enacted federal statutes "such as the Lyncher [A]ct, effective October 21, 1998, . . . made it a federal crime for a sex offender required to register in his home state to fail to register as a sex offender in any other state in which the offender relocated or was employed." (citing 42 U.S.C. § 14072(i)).  Under the Lyncher Act, a repeat offender, as May, is subject to a statutory maximum term of ten years imprisonment.  See id.

## D. Due Process

May next contends application of SORNA to his conduct violates his due process rights. May's contention, when boiled down to its essence, amounts to an "ignorance of the law" argument. May correctly notes there is an exception to the general "ignorance of the law is no excuse" maxim, citing Lambert v. California, 355 U.S. 225, 228-29 (1957). The district court correctly distinguished Lambert, noting:

> The Lambert Court found an exception to the ignorance is no excuse rule may exist if (1) the defendant's conduct was wholly passive, (2) the defendant is not per se blameworthy, and (3) there was an absence of circumstances alerting the defendant of the consequences of the deed. [Id.] at 228-29. In the context of examining public welfare statutes lacking a scienter requirement, the Court has reasoned Congress has weighed the possible injustice imposed on a defendant by disposing of a knowledge of the law requirement and found it does not outweigh the benefit to the person the law is meant to protect. United States v. Freed, 401 U.S. 601, 609-10 (1971).

As part of his plea agreement, May admitted he knew, based on previously enacted state laws, he had an obligation to register and keep his registration current when moving between jurisdictions. May also, as the district court found, "received plenty of information regarding those registration obligations." May's due process rights were not violated.

## E. Commerce Clause

May alleges SORNA violates the commerce clause because it fails to establish a constitutionally sufficient nexus to the regulation of interstate commerce. The power to regulate commerce between the states includes the power to regulate the following:

(1) "the use of the channels of interstate commerce";

(2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and
(3) "those activities having a substantial relation to interstate commerce."

United States v. Lopez, 514 U.S. 549, 558-59 (1995).

For May to be convicted, SORNA requires the government to prove May traveled in interstate or foreign commerce, and thereafter failed to register as required by SORNA. See 18 U.S.C. § 2250(a)(2)(B). SORNA thus derives its authority from each prong of Lopez—and most specifically, the ability to regulate "persons or things in interstate commerce" and "the use of the channels of interstate commerce." May was undeniably a "person . . . in interstate commerce" in that he traveled and relocated between various states, and traveled among many other states. May did so via the "use of the channels of interstate commerce." It has been long established Congress may forbid or punish use of interstate commerce "as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." Brooks v. United States, 267 U.S. 432, 436 (1925) (emphasis added). Congressional regulation of the channels of interstate commerce has also been upheld when the punishment "was intended to prevent the use of interstate commerce to facilitate . . . forms of immorality." Id. at 437 (citation omitted). SORNA contains a sufficient nexus to interstate commerce.

May attempts to argue his case is more akin to Lopez, 514 U.S. at 551, in which the Supreme Court struck down the Gun-Free School Zones Act, and United States v. Morrison, 529 U.S. 598, 601-02, 617 (2000), in which the Supreme Court struck down the Violence Against Women Act, 42 U.S.C. § 13981(b) (VAWA). Lopez and Morrison are distinguishable in two significant respects.

First, the Gun-Free School Zones Act and the VAWA did not contain a jurisdictional "hook"—or "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Lopez,

-14-

514 U.S. at 562; <u>Morrison</u>, 529 U.S. at 613. Congress's addition of such a jurisdictional "hook" in the Gun-Free School Zones Act proved sufficient to validate the revised Gun-Free School Zones Act. <u>See</u> <u>United States v. Danks</u>, 221 F.3d 1037, 1038-39 (8th Cir. 1999). SORNA includes an express and clear jurisdictional element for individuals not convicted pursuant to federal jurisdiction. <u>See</u> § 2250(a)(2)(B).

Second, <u>Lopez</u> and <u>Morrison</u> related to the third <u>Lopez</u> prong: "a regulation of activity that substantially affects interstate commerce." <u>Lopez</u>, 514 U.S. at 559; <u>see</u> <u>Morrison</u>, 529 U.S. at 609. SORNA is more easily supported by the first and second <u>Lopez</u> prongs. Thus, we need not address May's contention "SORNA was not accompanied by findings [that the activity in question exerted a 'substantial influence on interstate commerce'] similar to those in support of the [Controlled Substances Act] regulation considered [and upheld] in [<u>Gonzales v. Raich</u>, 545 U.S. 1 (2005)]." Even if this argument effectively distinguished <u>Raich</u>, and the third <u>Lopez</u> prong, SORNA would still remain valid under the first two interstate commerce jurisdictional prongs.

## III.   CONCLUSION

The judgment of the district court is affirmed.

_____