RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

JIMMY COLEMAN,

          *Defendant-Appellant.*

No. 10-5283

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 09-00030-001—Amul R. Thapar, District Judge.

Decided and Filed: March 29, 2012

Before: MOORE and COLE, Circuit Judges; BECKWITH, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Matthew R. Malone, HURT, CROSBIE & MAY, PLLC, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., Brandon W. Marshall, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

COLE, Circuit Judge. Defendant-Appellant Jimmy Coleman entered a conditional guilty plea to traveling in interstate commerce and failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA" or "the statute"), 18 U.S.C. § 2250. He reserved the right to challenge the constitutionality of the statute. On appeal, Coleman contends that SORNA, as applied to him, violates the

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

Ex Post Facto Clause and that it constitutes an invalid exercise of Congress's powers under the Commerce Clause. We disagree and AFFIRM.

## I. BACKGROUND

On October 30, 2002, Jimmy Coleman was convicted of sexual battery, an offense requiring him to register as a sex offender under Ohio law. Three days before he was released from prison, in July 2005, Coleman signed a notice acknowledging his duty to register personally in each county in Ohio, or any other state where he resided, upon five days of arriving there. He did not register in Ohio. Some time before SORNA went into effect, Coleman moved permanently to Kentucky and again did not register. On April 28, 2009, he was arrested for a parole violation. Coleman had made sporadic trips from Kentucky to West Virginia between May 2008 and mid-February 2009, including several after SORNA became effective on August 1, 2008.

On August 6, 2009, the United States indicted Coleman on one count of violating 18 U.S.C. § 2250(a), failure to register as a sex offender. On September 24, 2009, Coleman filed a motion to dismiss the indictment, challenging the constitutionality of § 2250(a). *United States v. Coleman*, Crim. No. 09-30-ART, 2009 WL 4255545, at *1 (E.D. Ky. Nov. 24, 2009). The motion was denied. *Id.* On December 8, 2009, Coleman pleaded guilty to violating § 2250(a). He reserved the right to appeal the district court's denial of his motion to dismiss the indictment. This appeal follows.

## II. ANALYSIS

Congress enacted SORNA as part of the Adam Walsh Child Protection and Safety Act ("AWCPSA"). *Carr v. United States*, 130 S. Ct. 2229, 2232 (2010) (citing Pub. L. No. 109-248, Tit. 1, 120 Stat. 590). The AWCPSA arose after previous, state-centered attempts to regulate the interstate movement of unregistered sex offenders had failed. Congress found that the state-based regime "left loopholes and gaps," *United States v. Gould*, 568 F.3d 459, 473 (4th Cir. 2009), allowing sex offenders to evade registration requirements "when the sex offender moves from one State to another." *Carr*, 130 S. Ct. at 2240 (quoting H.R. Rep. No. 109-218, pt. 1, at 26 (2005) (internal

quotation marks removed)).     Consequently, by 2006, one fifth of all sex offenders—more than 100,000 people—had become "missing" from the system.  *Id.* (quoting H.R. Rep. No. 109-218, pt. 1, at 26 (2005)).

Citing "a strong public interest in finding [unregistered sex offenders] and having them register with current information," H.R. Rep. No. 109-218, pt. 1, at 24 (2005), Congress enacted the AWCPSA.  By this law, Congress created a national registry of sex offenders, allowing all states to access information from a single database.  Additionally, the AWCPSA enhanced registration requirements and interstate monitoring, so that "if the sex offender either moves to a new State, works in a new State, or attends school in a new State, the new State is required to notify the other State that the sex offender is doing so in that State."  *Id.* at 26.  SORNA enforces the requirements of the AWCPSA, providing that:

> (a) IN GENERAL.—Whoever—
>
> > (1) is required to register under the Sex Offender Registration and Notification Act;
> >
> > (2) . . . (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> >
> > (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.  Each of SORNA's elements "must be satisfied in sequence, culminating in a post-SORNA failure to register."  *Carr*, 130 S. Ct. at 2235 (internal quotation marks omitted).  While SORNA applies retroactively to all individuals convicted of sexually oriented offenses regardless of the date of conviction, the elements of travel and of failure to register must both take place after the Attorney General made SORNA applicable to pre-enactment offenders on August 1, 2008.  *United States v. Stevenson*, — F.3d —, Nos. 10-1043, 10-1117, 2012 WL 573326, at *1 (6th Cir. Feb. 23, 2012); *United States v. Utesch*, 596 F.3d 302, 311 (6th Cir. 2010); *see Reynolds v. United States*, 565 U.S. —, 132 S. Ct. 975, 980 (2012) (SORNA does not apply to pre-

enactment offenders until the Attorney General so specifies); *Carr*, 130 S. Ct. at 2233 ("Liability under § 2250, we hold, cannot be predicated on pre-SORNA travel.").

Coleman challenges the district court's application of SORNA to him as unconstitutional.  First, he claims that SORNA violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3 by punishing him on the basis of pre-enactment conduct.  Second, Coleman claims that SORNA is unconstitutional because it regulates conduct that falls outside the scope of Congress's power under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

*A. Standard of Review*

We review the denial of a motion to dismiss the indictment for an abuse of discretion.  *United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001).  We review a district court's determination of the constitutionality of federal statutes de novo.  *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000).

*B. Ex Post Facto Clause Challenge*

The Ex Post Facto Clause prohibits Congress from passing any law that (1) retroactively imposes punishment for an act that was not punishable when committed, (2) retroactively increases the punishment for a crime after its commission, or (3) deprives one charged with a crime of a defense that was available at the time the crime was committed.  *Collins v. Youngblood*, 497 U.S. 37, 42 (1990).  Coleman contends that, because the sentences for SORNA violations are tailored to the nature of the defendant's prior sex-offense convictions, SORNA actually punishes the prior sex offense and not the failure to register.  Thus, applying SORNA to individuals who committed the underlying sex offense prior to its effective date retroactively increases the punishment for the subject offense after its commission, bringing it into the second category of Ex Post Facto Clause violations.  In *United States v. Felts*, we held that such an application of SORNA does not violate the Ex Post Facto Clause.  — F.3d —, No. 11-5237, 2012 WL 762977, at *5 (6th Cir. Mar. 12, 2012).

*C.  Commerce Clause Challenge*

Coleman's second constitutional challenge alleges that SORNA exceeds the ambit of Congress's power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  In *United States v. Lopez*, the Supreme Court articulated three broad categories of activity that Congress may regulate through its commerce power:

> First, Congress may regulate the use of the channels of interstate commerce.  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce.

514 U.S. 549, 558-59 (1995) (internal citations omitted).  We invalidate statutes only if they bear no rational relationship to any of these powers.  *United States v. Faasse*, 265 F.3d 475, 481 (6th Cir. 2001) (en banc) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276 (1981)).

Coleman argues that SORNA fits into none of the *Lopez* categories.  He contends that SORNA exceeds the first prong because, due to the fact that registration is not required until after the offender exits the stream of interstate commerce to settle in a given location, SORNA lacks a nexus to interstate commerce.  He maintains that SORNA exceeds the second prong because its focus on offender registration, as opposed to offender travel, decouples it from any "instrumentality of interstate commerce" that Congress constitutionally may regulate.  Finally, he alleges that SORNA exceeds the third prong because it regulates activity with no cognizable relation to interstate commerce, as neither travel nor registry "substantially affect" commerce.

None of these arguments is availing.  We find that SORNA fits comfortably within the first two *Lopez* prongs.  *Accord United States v. George*, 625 F.3d 1124, 1129-30 (9th Cir. 2010), *vacated on other grounds*, — F.3d —, No. 08-30339, 2012 WL 718297 (9th Cir. Mar. 7, 2012); *United States v. DiTomasso*, 621 F.3d 17, 26 (1st Cir.

2010), *vacated on other grounds in light of Reynolds by* No. 10-8532, 2012 WL 538283 (Feb. 21, 2012); *United States v. Vasquez*, 611 F.3d 325, 330-31 (7th Cir. 2010); *United States v. Shenandoah*, 595 F.3d 151, 160 (3d Cir. 2010), *abrogated on other grounds by Reynolds*, 565 U.S. at —, 132 S. Ct. at 980; *United States v. Guzman*, 591 F.3d 83, 89-92 (2d Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 259-61 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 470-75 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210-12 (11th Cir. 2009); *United States v. Lawrance*, 548 F.3d 1329, 1337 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008), *abrogated on other grounds by Reynolds*, 565 U.S. at —, 132 S. Ct. at 980. We therefore decline to address the third *Lopez* prong.

### 1. The First Lopez Prong

SORNA constitutes a valid regulation of the use of the channels of interstate commerce. The "commerce" that Congress may regulate through the first *Lopez* prong is not limited to economic matters, but rather may encompass "using the channels of interstate commerce to bring 'the spread of any evil or harm to the people of other states from the state of origin.'" *United States v. Al-Zubaidy*, 283 F.3d 804, 811 (6th Cir. 2002) (quoting *Brooks v. United States*, 267 U.S. 432, 436 (1925)). Where a statute lacks a clear economic purpose, the inclusion of an explicit jurisdictional element suffices to "ensure, through case-by-case inquiry, that the [violation] in question affects interstate commerce." *Lopez*, 514 U.S. at 561.

Indeed, we regard the presence of such a jurisdictional element as the touchstone of valid congressional use of its Commerce Clause powers to regulate non-commercial activity. To wit, after the Supreme Court struck down the civil remedies provision of the Violence Against Women Act ("VAWA"), *see United States v. Morrison*, 529 U.S. 598, 613 (2000), we upheld various criminal provisions of the same statute in both *Al-Zubaidy* and *United States v. Page*, 167 F.3d 325, 325 (6th Cir. 1999) (en banc), *cert. denied*, 528 U.S. 1003 (1999). In each case, the presence of a "jurisdictional element" involving interstate travel brought the criminal provision unquestionably within the first prong of *Lopez*. *See Al-Zubaidy*, 283 F.3d at 812 ("The language of the statute provides

an explicit jurisdictional element requiring interstate travel, an element that reinforces its category one justification . . . ."); *Page*, 167 F.3d at 334-35 (Moore, J., concurring) ("Section 2261(a)(2) is similarly constitutional under the Commerce Clause because the interstate domestic violence provision's requirement of 'the crossing of a state line . . . plac[es] the [commission of a crime of violence causing bodily injury] squarely in interstate commerce.'") (quoting *United States v. Bailey*, 112 F.3d 758, 766 (4th Cir. 1997)) (alterations in *Page*).　We have applied this same principle to other statutory schemes.　*See United States v. Chesney*, 86 F.3d 564, 570 (6th Cir. 1996) (finding that the presence of a jurisdictional element defeated defendant's challenge to a felon-in-possession statute).

　　　SORNA fits comfortably within this rubric.　It contains an express jurisdictional element, conditioning conviction under SORNA on the government proving that the defendant has used the channels of interstate commerce by traveling to another state or country.　*See* 18 U.S.C. § 2250(a)(2).　Although not directed at economic activity, SORNA targets "the spread of [an] evil or harm" via the channels and instrumentalities of interstate commerce; namely, "the evasion of sex offender registration requirements by sex offenders who have crossed jurisdictional lines." *Lawrance*, 548 F.3d at 1337. Thus, we join several of our sister circuits in finding that SORNA's jurisdictional element, coupled with its purpose, creates the requisite nexus to the use of the channels of interstate commerce.　*See, e.g.*, *George*, 625 F.3d at 1130 (Ninth Circuit); *DiTomasso*, 621 F.3d at 26 (First Circuit); *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. at —, 132 S. Ct. at 980; *May*, 535 F.3d at 922 (Eighth Circuit).　That the culminating act—the failure to register—does not occur until the defendant exits the stream of interstate commerce is irrelevant to the constitutionality of the statute.　*Cf. Page*, 167 F.3d at 334 (upon inclusion of a jurisdictional element, "[a]ny arguably intrastate nature or timing of the crime . . . is irrelevant").　Accordingly, SORNA bears a rational relationship to Congress's power to regulate the channels of interstate commerce.

## 2. *The Second* Lopez *Prong*

SORNA also constitutes a valid regulation of the instrumentalities of interstate commerce.  As *Lopez* explains, the "instrumentalities of interstate commerce" include "persons or things in interstate commerce."  514 U.S. at 558.  When Coleman traveled across state lines, he became  a "person . . . in interstate commerce."  *Cf. Vasquez*, 611 F.3d at 330; *Shenandoah*, 595 F.3d at 161; *Guzman*, 591 F.3d at 90; *Gould*, 568 F.3d at 472; *Ambert*, 561 F.3d at 1211; *Hinckley*, 550 F.3d at 940; *May*, 535 F.3d at 921.  As with the first *Lopez* prong, it cannot be said that SORNA's focus on Coleman's failure to register as a sex offender so decouples the regulated conduct from the instrumentalities of interstate commerce that it becomes unconstitutional.  Rather, it suffices that the government must prove that Coleman was a "person . . . in interstate commerce" during a particular period, *i.e.*, between the time that Coleman's duty to register under SORNA arose and when he failed to perform that duty.  *See Carr*, 130 S. Ct. at 2233.

Thus, SORNA fits squarely within Congress's Commerce Clause powers and the district court did not abuse its discretion by failing to dismiss the indictment.

### III.  CONCLUSION

We AFFIRM.