**UNITED STATES of America**

v.

**Steven SANTANA aka Steven Santana Smith.**

**No. EP–08–CR–978–DB.**

United States District Court, W.D. Texas, El Paso Division.

Oct. 31, 2008.

943

J. Brandy Gardes, Assistant U.S. Attorney, El Paso, TX, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

DAVID BRIONES, District Judge.

On this day, the Court considered Defendant Steven Santana Smith's "Motion To Dismiss Indictment," filed in the above-captioned cause on May 21, 2008. On June 9, 2008, the United States of America ("the Government") filed a "Response To Defendant's Motion To Dismiss Indictment" ("Response"), to which Defendant filed a Reply on June 20, 2008. On July 14, 2008, and August 13, 2008, respectively, the Government filed a "Supplemental Response To Defendant's Motion To Dismiss Indictment" and a "Second Supplemental Response To Defendant's Motion To Dismiss Indictment." After due consideration, the Court is of the opinion that Defendant's Motion should be denied.

## BACKGROUND

On April 2, 2008, the grand jury sitting in El Paso returned a single-count Indictment against Defendant, charging that, from October 12, 2007, to March 13, 2008, Defendant failed to register as a sex offender as required under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a)(2)-(3). The Government expects the evidence at trial to show the following.

On January 5, 2007, Defendant was convicted of Carnal Knowledge in violation of United States Code of Military Justice ("UCMJ"), Article 120, and of Sodomy of a Child under 16 in violation of UCMJ, Article 125. Defendant received an eighteen-month sentence and a bad conduct discharge. On October 12, 2007, prior to his release from prison but after SORNA's enactment, Defendant signed and initialed DD Form 2791, a Notice of Release/Acknowledgment of Convicted Sex Offender Registration Requirements. Specifically, Defendant initialed Section 8, which stated that Defendant would reside in El Paso, Texas, when released on October 19, 2007. On this form, Defendant further acknowledged that he was subject to registration requirements as a sex offender in any State or U.S. Territory in which he resided, worked, or was a student.

Upon his release from military confinement, Defendant failed to report to the El Paso Police Department as instructed. Neither the Texas Sex Offender Registration database nor the Department of Justice's National Sex Offender Public Registry reflected that, at any time, Defendant had so reported and registered as a sex offender. Rather, on March 13, 2008, Defendant was located in Denver, Colorado, where he had resided since November 2, 2007.

## SORNA'S STATUTORY SCHEME

On July 26, 2006, President George W. Bush signed into law the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act").[1] SORNA is found in Title I of the Adam Walsh Act. 42 U.S.C.A. § 16901 (West Supp.2007).[2] SORNA acted to close the gaps and loopholes present in previous laws governing sex offender

---

1. In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, which provided federal funding to states that enacted sex offender registration laws, commonly known as "Megan's Laws." 103 Pub.L. 322, tit. XVII, § 170101 (codified at 42 U.S.C.A. § 14071). By 1996, all fifty (50) states and the District of Columbia had enacted Megan's Laws. Texas' Megan's Law requires sex offenders subject to its requirements to initially register and to periodically report to their designated reporting authority in order to verify the information in the registry. Tex.Code Crim. Proc. Ann. §§ 62.051, 62.058 (Vernon 2006 & Supp.2008).

2. The Court refers to SORNA by the section at which it was codified rather than its public law designation.

registration and was viewed as a means by which the nationwide network of sex offender registration and notification programs could be strengthened. The National Guidelines for SORNA, 72 Fed.Reg. 30210, 30211 (proposed May 30, 2007). As such, with federal funding as an incentive,[3] SORNA directs the fifty (50) states to maintain sex offender registries that conform to SORNA's requirements and to enact laws penalizing a sex offender's failure to so register. 42 U.S.C.A. §§ 16912, 16913(e). Further, SORNA itself created a new federal offense for failing to register as a sex offender. In relevant part, title 18, section 2250 of the United States Code states that

> whoever . . . is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice) . . . [and] knowingly fails to register or update a registration as required by [SORNA]; shall be fined under this title or imprisoned not more than 10 years, or both. 18 U.S.C.A. § 2250(a)(2)(A), (3) (West Supp.2008).

To be in compliance with SORNA, sex offenders must maintain registration "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C.A. § 16913(a). On February 28, 2007, the Attorney General issued an Interim Rule clarifying that "[t]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3 (2007). In addressing the Interim Rule, the Attorney General clearly indicated that SORNA is "not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program." The National Guidelines for SORNA, 72 Fed.Reg. at 30212.

## DISCUSSION

Through the instant Motion, Defendant contends that SORNA is unconstitutional in various respects. Specifically, Defendant argues that SORNA violates the Commerce Clause, the Due Process Clause, the Ex Post Facto Clause, the Non–Delegation Doctrine, and the Tenth Amendment. Further, Defendant argues that SORNA violates the Administrative Procedures Act, and that the Indictment in the instant case is insufficiently pleaded.[4] The Government contends that SORNA is constitutional in all respects, that the Administrative Procedures Act is not violated, and that the instant Indictment is sufficiently pleaded. The Court addresses each argument below.

Before turning to Defendant's arguments, however, the Court notes that it is unclear whether Defendant raises facial or "as applied" challenges to SORNA. Due to the United States Supreme Court's ("Supreme Court") clear preference for "as applied" attacks, *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), defendants raising facial challenges shoulder a heavy burden. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Indeed, outside the context of the First Amendment, a defendant raising a facial attack "must establish that no set of circumstances exists under which the Act would be valid." *Id.* Conversely, then, if a provision operates constitutionally in one case, a facial chal-

---

3. *See* 42 U.S.C.A. § 16925(a) (West Supp. 2007) (stating that a jurisdiction's federal funds shall be reduced by ten (10) percent if the jurisdiction fails to implement SORNA).

4. The Court addresses the arguments in the order of their presentment in Defendant's Motion.

lenge must necessarily fail. *See United States v. Robinson,* 119 F.3d 1205, 1214 (5th Cir.1997). Consequently, to the extent possible, the Court construes Defendant's arguments as "as applied" challenges. Nevertheless, Defendant rarely applies the raised arguments to his own particular case. As such, in the absence of any clear application to his own case, the Court will consider Defendant's arguments as facial challenges.

 Regardless of the nature of the constitutional attack, Defendant must still have standing to raise particular arguments. To have standing, one "must have suffered an 'injury in fact'"—that is, an injury which is both concrete and particular. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, a causal connection must exist between the "injury in fact" and the conduct complained of, and, third, redress of the injury must be likely rather than speculative. *Id.* at 560–61, 112 S.Ct. 2130. The burden of establishing these elements falls squarely on the defendant. *See id.* at 561, 112 S.Ct. 2130. Throughout the instant Motion, Defendant raises several arguments that he patently lacks standing to make, as discussed more fully below.

### A. Commerce Clause

 In his first constitutional attack, Defendant contends that SORNA purports to regulate activities that substantially affect interstate commerce.[5] As such, Defendant argues that SORNA violates the Commerce Clause in that SORNA regulates purely intrastate activity that does not substantially affect interstate commerce. Further, Defendant contends that SORNA lacks a jurisdictional element creating a link between Defendant's failure to register and interstate commerce, and, finally, Defendant argues that Congress made no findings that suggest a link to interstate commerce. The Government counters that, as Defendant was convicted under the UCMJ and is indicted under § 2250(a)(2)(A), his federal conviction does not require a Commerce Clause nexus. The Court agrees with the Government.

 The United States Constitution ("Constitution") states that Congress shall "make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cl. 14. Based on the Constitution, therefore, Congress has the exclusive authority to draft laws affecting the military. *Id.* The Uniform Code of Military Justice represents this law. *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 247, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960). Further, SORNA provides that sex offenders convicted under federal law, including the UCMJ, are required to register or face criminal penalties. 18 U.S.C.A. § 2250(a)(2)(A). As such, defendants indicted under § 2250(a)(2)(A) are held accountable for violations of federal—not state—law, which falls squarely within Congress' exclusive jurisdiction. As state laws are not implicated, Congress' Commerce Clause authority, granting Congress the power "to regulate Commerce with foreign Nations, and among the several States" does not represent the underlying principle through which Congress drafted § 2250(a)(2)(A). U.S. CONST. art. I, § 8, cl. 3.

Here, Defendant allegedly violated § 2250(a)(2)(A) in that he was convicted under the UCMJ and, thereafter, failed to register. Consequently, Defendant allegedly violated that portion of SORNA premised on a federal—not state—law con-

---

**5.** The Court construes the first argument as a facial challenge, as the Commerce Clause fails to apply to the facts of Defendant's case.

viction. As a result, Congress' Commerce Clause authority is not implicated in the instant case and an analysis of that authority is not warranted. In short, Defendant does not have standing to raise an attack on Commerce Clause grounds as he was convicted under federal law. *See Raines,* 362 U.S. at 21, 80 S.Ct. 519 (stating that "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional"). Thus, the Court finds that the Commerce Clause is not implicated in the instant case, and, therefore, this argument must fail.

## B. Due Process Clause

In his second constitutional attack, Defendant advances three (3) arguments, asserting that SORNA violates his procedural and substantive due process rights in that: (1) SORNA does not provide a mechanism to challenge the registration or designation process, (2) Defendant did not receive any notice of SORNA or its requirements, and (3) SORNA has not been implemented by Texas or any other state.[6] The Court finds Defendant's arguments unconvincing.

■ The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Procedural due process requires " 'notice and opportunity for hearing appropriate to the nature of the case' " before governmental decisions deprive individuals of "liberty" or "property"

interests. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust. Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). To determine what procedure is due, the court balances the affected private interest, the risk of an erroneous deprivation of such interest through the procedures used, and the Government's interest in maintaining the current procedures. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Substantive due process protects from arbitrary government action that "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The Supreme Court has been reluctant to expand the concept of substantive due process, finding that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Accordingly, a person who has been convicted of a crime is eligible for whatever penalty is authorized by statute for that offense so long as "the penalty is not based on an arbitrary distinction." *Chapman v. United States,* 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

### 1. Procedure to Challenge SORNA Registration

■ First, Defendant argues that his right to procedural due process has been violated, because SORNA does not provide any procedure or mechanism to challenge

---

**6.** Defendant applies the facts of his own case to his due process argument. Consequently, the Court construes this argument as an "as applied" challenge to SORNA. As will be discussed more fully below, SORNA applies constitutionally to Defendant's case. There-

fore, a facial challenge must fail. *See United States v. Robinson,* 119 F.3d 1205, 1214 (5th Cir.1997) (rejecting a facial challenge "[b]ecause there are circumstances in which the . . . Act operates constitutionally").

his classification as a sex offender under SORNA. Further, Defendant argues that he must be afforded a hearing before being required to register or comply with other SORNA reporting conditions. The Government responds that Defendant's conviction of a sex offense provided all the process Defendant was due. The Court agrees with the Government.

Where registration as a sex offender is based solely on a conviction, the Supreme Court has held that due process does not require a separate hearing.[7] *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). In *Connecticut Department of Public Safety v. Doe*, the Supreme Court held that Connecticut's Megan's Law did not violate the Due Process Clause as "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."[8] *Id.* at 7, 123 S.Ct. 1160. Likewise, in *Neal v. Shimoda*, a case Defendant cites for the proposition that he must be afforded additional process, the United States Court of Appeals for the Ninth Circuit held that an inmate convicted "of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process" prior to his being labeled as a sex offender and included in a mandatory program. 131 F.3d 818, 831 (9th Cir.1997).

Like Connecticut's Megan's Law, SORNA explicitly applies to persons with convictions under the UCMJ. *See* 18 U.S.C.A. § 2250(a)(1), (2)(A). Specifically, § 2250 states that a sex offender as defined by SORNA is one who was convicted under federal law, which includes the UCMJ. 18 U.S.C.A. § 2250(a)(2)(A). Thus, SORNA's requirements turn on an offender's conviction alone. *See Conn. Dep't of Pub. Safety*, 538 U.S. at 7, 123 S.Ct. 1160.

Here, Defendant was convicted of two (2) sexual offenses under the UCMJ. Defendant is therefore subject to the SORNA registration requirements due to his convictions for which he was afforded the procedural safeguards to contest.[9] As such, his procedural due process rights have not been violated by requiring him to comply with the SORNA registration requirements in light of those convictions.

---

7. Defendant cites numerous cases for the proposition that he must be afforded a hearing before being required to register, but, in all of these cases, the persons being subjected to sex offender registration requirements had *not* previously been convicted of a sexual offense. *See Coleman v. Dretke*, 395 F.3d 216, 223–24 (5th Cir.2004) (holding prisoner's procedural due process rights violated if required to register as a sex offender when he was not convicted of a sex offense); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir.1999) ("An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender."); *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) ("Neal has never been convicted of a sex offense and has never had an opportunity to formally challenge the imposition of the 'sex offender' label in an adversarial setting.").

8. Defendant argues that, despite the *Doe* decision, SORNA violates his procedural due process rights "as there is no procedural method for him to challenge the validity of the prior conviction." Defendant is mistaken; convicted sex offenders are not barred from appealing their underlying convictions.

9. Defendant lacks standing to challenge the constitutionality of whether or not the Act applies to certain state convictions, because Defendant was convicted under federal law. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (requiring party asserting standing to have suffered an "injury in fact"). He cannot allege an injury traceable to the alleged constitutional deficiencies in SORNA as applied to state convictions. *See id.*

Thus, the Court finds that SORNA's application to Defendant is constitutionally firm.

Unlike the defendant in *Doe,* however, Defendant additionally claims that his substantive due process rights would be violated by complying with SORNA registration requirements. Defendant asserts that, "if he had not actually been convicted of an offense included as a SORNA defined sex offense," "he may be deprived of liberty when his name is listed on the state and federal registries." Defendant indicates that this can happen when a conviction is overturned or expunged or the person is pardoned. The Court is not persuaded.

In the instant case, Defendant's conviction has not been overturned or expunged nor has Defendant been pardoned. Consequently, Defendant's conviction falls squarely within SORNA. Given the Supreme Court's reluctance to expand the concept of substantive due process, *Lewis,* 523 U.S. at 842, 118 S.Ct. 1708, and its preference for "as applied" attacks, *Raines,* 362 U.S. at 21, 80 S.Ct. 519, the Court will not consider substantive due process arguments based on nothing more than a possibility that some person could suffer such an injury. In short, Defendant's substantive due process argument fail for lack of standing.[10] *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Thus, the Court finds that Defendant's procedural and substantive due process arguments based on the procedures in place to challenge SORNA classification should be denied.

## 2. Lacking State Implementation of SORNA

In his second due process challenge, Defendant argues that he cannot be prosecuted for failure to register in compliance with SORNA, because Texas has not yet implemented SORNA. The Government counters that Defendant's requirements are in no way dependent on Texas' implementation of SORNA. The Court agrees with the Government.

At the outset, the Court notes that SORNA encompasses two (2) distinct requirements, one applicable to individuals and the other applicable to the fifty (50) states. *See* Applicability of SORNA, 72 Fed.Reg. 8894, 8895 (Feb. 28, 2007) (to be codified at 28 C.F.R. pt. 72). First, SORNA creates a criminal offense for individuals who failed to register or update their registration. 18 U.S.C.A. § 2250. Second, states are required to implement SORNA by 2009 or suffer the partial loss of their federal funding. 42 U.S.C.A. §§ 16924(a), 16925(a); The National Guidelines for SORNA, 72 Fed.Reg. at 30211. In essence, Defendant reads into the statute the condition that execution of SORNA's individual requirements follow state implementation, and that compliance with SORNA is impossible as Texas has not yet implemented SORNA. Defendant's argument is flawed for two (2) reasons.

First, the Supreme Court has clarified that "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). Congress enacted SORNA for the specific purpose of

---

**10.** Furthermore, requiring sex offenders to comply with registration requirements serves the government interest by "protect[ing] the public from sex offenders," 42 U.S.C.A. § 16901, and it is not "intended to injure in some way unjustifiable by any government interest." *Coleman v. Dretke,* 395 F.3d 216, 224–25 (5th Cir.2004). The Act, therefore, does not violate substantive due process. *See id.* (finding Texas's sex offender registration and therapy requirements do not violate substantive due process rights).

"establishing a comprehensive national system for the registration of [sex offenders]." 42 U.S.C.A. § 16901. Delayed execution based on state implementation would frustrate the stated purpose. In fact, in no way does SORNA contemplate that individual requirements would be delayed in such a manner.[11] Furthermore, as SORNA pertains to sex offenders convicted under federal law—as is Defendant's case, "SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness," regardless of a three-year grace period for jurisdictions implementing SORNA's requirements. Applicability of SORNA, 72 Fed.Reg. at 8895.

Second, all states, including Texas, have sex offender registration programs in place. The National Guidelines for SORNA, 72 Fed.Reg. at 30210 ("All states currently have sex offender registration and notification programs and have endeavored to implement the [SORNA] standards in their existing programs."); *see* TEX.CODE CRIM. PROC. ANN. § 62, *et seq.* (Vernon 2006 & Supp.2008). The Texas Sexual Offender Registration Program ("TSORP") already requires sex offenders who are living in or employed in Texas and were convicted under Texas law, laws of another state or country, federal law, or the UCMJ to initially register and to periodically report to update registration information. TEX.CODE CRIM. PROC. ANN. §§ 62.001(5), 62.051, 62.058. SORNA similarly requires that federal and military sex offenders be "inte-

grated into the sex offender registration programs of the States." *See* The National Guidelines for SORNA, 72 Fed.Reg. at 30229. Accordingly, offenders such as Defendant "are required to comply with the SORNA registration requirements in the jurisdictions in which they reside" and "may be prosecuted under 18 U.S.C. § 2250 if they fail to do so." *See id.*

Here, Defendant's registration requirement was not contingent on Texas' implementation of SORNA. Rather, Defendant was fully informed prior to his release that he was subject to registration requirements in any State in which he resided, worked, or was a student. This requirement did not include an exclusion for any State which had yet to implement SORNA. Defendant signed a form acknowledging this duty. Texas had, at the time of Defendant's move to El Paso, a sex offender registration law in place. Thus, Defendant was perfectly capable of complying with the registration process that existed in Texas, and this is what SORNA requires. *See* 18 U.S.C.A. § 2250. Therefore, Defendant's constitutional attack on the ground that he was incapable of complying with SORNA should be denied.

### 3. Notice of Duty to Register Under SORNA

In his last due process argument, Defendant contends that he did not receive adequate notice of his duty to register under SORNA, because he was not specifically told of the SORNA registration require-

---

11. Indeed, district courts have routinely rejected Defendant's implementation argument. *See United States v. Torres,* 573 F.Supp.2d 925, 943 (W.D.Tex.2008) ("The fact that Texas has failed to fully implement the state component of SORNA does not obviate Defendant's obligation to register as required by the individual component."); *United States v. Gould,* 526 F.Supp.2d 538, 542 (D.Md.2007) (noting that a state's "failure to implement SORNA does not preclude [an offender's] prosecution under § 2250(a)"); *United States v. Pitts,* No.

07–157–A, 2007 WL 3353423, at *7 (M.D.La. Nov. 7, 2007) (requiring an offender to register and keep the registration current in applicable states because those jurisdictions "have maintained sex offender registries which predate" the offender's eligibility under SORNA); *United States v. Beasley,* No. 1:07–CR–115–TCB, 2007 WL 3489999, at *3 n. 4 (N.D.Ga. Oct. 10, 2007) ("Registration under SORNA means registration under a state's sex offender registration rules.").

ments.[12] In essence, Defendant argues that registration "under SORNA" entails something other than complying with TSORP requirements and that he needed specific notice of the possibility that he could be charged under 18 U.S.C. § 2250. The Government contends that "registration as required by [SORNA]" is simply a general requirement to register in the jurisdictions in which Defendant resides, is employed, or attends school. The Court agrees with the Government.

■■■■ To be convicted under 18 U.S.C. § 2250, a defendant must "knowingly fail[ ] to register or update a registration as required by [SORNA]." 18 U.S.C.A. § 2250(a)(3). The notification of the duty to register "as required by" SORNA only requires notice of the offender's general requirements under state law. The National Guidelines for SORNA, 72 Fed.Reg. at 30229. Proper notice consists of an official informing the sex offender of the duties of a sex offender, explaining those duties, obtaining the offender's signature on a form stating that the duty to register has been explained and understood, and ensuring that the offender is registered. 42 U.S.C.A. § 16917. Further, it is well-established that ignorance of the law is no excuse for non-compliance. *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). An exception to this rule exists if "(1) the defendant's conduct was wholly passive, (2) the defendant is not per se blameworthy, and (3) there was an absence of circumstances alerting the defendant to the consequences of the deed." *United States v. May,* 535 F.3d 912, 921 (8th Cir.2008) (internal quotations omitted). Thus, an of-

fender cannot be required to register if he "had no actual knowledge of the requirement that [ ]he register," *Lambert,* 355 U.S. at 227, 78 S.Ct. 240, but he need not have specific notice of the exact statute under which he can be charged. *United States v. Samuels,* 543 F.Supp.2d 669, 674 (E.D.Ky.2008).

■■■■ Here, Defendant signed DD Form 2791 after SORNA's enactment and before he was released from prison. DD Form 2791 states, "I hereby acknowledge that I was informed that upon my release from confinement …, I am subject to registration requirements as a sex offender in any State … in which I will reside, be employed, carry on a vocation, or be a student." DD Form 2791 also specifies that an offender must change or update registration information as required under the state sex offender registration program or be subject to criminal prosecution. Assuming the Government can prove these facts, Defendant had sufficient notice of his responsibilities under TSORP and therefore under SORNA. Thus, the Court finds that Defendant's due process argument should be denied on this ground, and that, therefore, Defendant has not demonstrated that SORNA is constitutionally infirm on the basis of the Due Process Clause.

**C. Ex Post Facto Clause**

In his third constitutional attack, Defendant argues that SORNA violates the Ex Post Facto Clause as SORNA increases Defendant's possible punishment beyond what his initial conviction carried.[13] Specifically, Defendant contends that SORNA is punitive as opposed to regulatory in

---

12. Again, Defendant lacks standing to assert that notification of requirements under state law violates due process rights for persons convicted of state offenses, since he was convicted of a federal offense. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130.

13. The Court construes the Defendant's argument as a facial challenge, as the Ex Post Facto Clause patently fails to apply to his own case.

nature and, therefore, it runs afoul of the Ex Post Facto Clause. The Government counters that the Ex Post Facto Clause is inapplicable to the instant case. The Court agrees with the Government.

■■■ The Constitution states that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. The prohibition on ex post facto laws is implicated when statutes are passed "which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Specifically, a statute is deemed to violate the Ex Post Facto Clause when any such statute " 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed.' " *Id.* at 42, 110 S.Ct. 2715 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Nevertheless, central to the definition of an ex post facto violation and faithful to the Latin translation, a statute must retroactively apply to a defendant.[14]

■■■ Here, Defendant was convicted pursuant to the UCMJ on January 5, 2007. Defendant was released on October 19, 2007, and, prior to his release, signed and initialed a Notice of Release/Acknowledgment of Convicted Sex Offender Registration Requirements. As SORNA was signed into law on July 27, 2006, SORNA fails to retroactively apply to Defendant's case in any manner. Consequently, Defendant lacks standing to raise a claim that SORNA violates the Ex Post Facto Clause as Defendant did not suffer an "injury in fact" which is traceable to the Ex Post

Facto Clause. *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Thus, the Court finds that Defendant's Motion is denied on this ground.

## D. Non–Delegation Doctrine

In his fourth constitutional attack, Defendant argues that SORNA is facially unconstitutional, because Congress delegated to the Attorney General in 42 U.S.C. § 16913(d) the authority to decide whether SORNA applies to sex offenders convicted before July 27, 2006. The Government responds that Defendant lacks standing to raise this issue because § 16913(d) only applies to those who could not initially register pursuant to § 16913(b), and Defendant was able to comply with § 16913(b). Defendant's argument lacks merit.

■■■ The Non–Delegation Doctrine is "rooted in the principle of separation of powers." *Mistretta v. United States*, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In particular, the doctrine provides that all legislative powers are vested in Congress. U.S. CONST. art. I, § 1. Congress can seek assistance from another branch of government, but only if it " 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.' " *Mistretta*, 488 U.S. at 372, 109 S.Ct. 647 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406, 48 S.Ct. 348, 72 L.Ed. 624 (1928)).

■■■ Further, showing that Congress exceeded its power in delegating authority to another body is a heavy burden. An act of Congress is unconstitutional if a

---

14. In the instant case, the Court does not reach the question of whether SORNA violates the Ex Post Facto Clause as Defendant lacks standing to raise the argument. Conse-

quently, the Court does not reach the issue of whether this statute is, in fact, punitive in nature.

court finds that "an absence of standards" existed such that "it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus v. United States,* 321 U.S. 414, 426, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The Supreme Court has only twice found such an absence of standards. *See Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Furthermore, the statutory interpretation canon of avoiding constitutional questions provides that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988).

 The challenged subsection, 42 U.S.C. § 16913(d), states in full:

(d) Initial registration of sex offenders unable to comply with subsection (b) of [§ 16913]

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

The Court first addresses the extent of the authority Congress delegated to the Attorney General in § 16913(d). The United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") held that § 16913(d) gives the Attorney General the authority to determine the retroactive application of SORNA. *United States v.* *Madera,* 528 F.3d 852, 857 (11th Cir.2008). To reach this conclusion, the Eleventh Circuit read § 16913(d) as having two separate clauses: the first pertaining to the retroactive application of SORNA to sex offenders with pre-enactment convictions, and the second pertaining to the rules applicable to those unable to initially register pursuant to the time requirements of § 16913(b). *Madera,* 528 F.3d at 858. In contrast, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") found that § 16913(d) only gives the Attorney General the authority to determine registration requirements for sex offenders unable to comply with § 16913(b). *United States v. May,* 535 F.3d 912, 918–19 (8th Cir.2008). The Eighth Circuit concluded that § 16913(d) was ambiguous because language in the second clause—"registration of *such* sex offenders" and "*other* categories of sex offenders who are unable to comply with [§ 16913(b) ]"—suggests that the category of offenders referenced in the first clause—"offenders convicted before July 27, 2006"—is limited to those sex offenders who are unable to comply with § 16913(b). *May,* 535 F.3d at 918; 42 U.S.C.A. § 16913(d). Like the Eighth Circuit, this Court finds that the language of § 16913(d) is ambiguous. *See May,* 535 F.3d at 918. To help resolve this ambiguity, the Court relies on the title of § 16913(d), which clearly limits that subsection's applicability to the initial registration of sex offenders unable to comply with the registration time line of § 16913(b). *See id.* at 918–19; *see I.N.S. v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

Additionally, a plain reading of the Act evidences that SORNA applies to all sex offenders, regardless of whether their conviction predated SORNA. *See* 42 U.S.C.A.

§§ 16911(1), (5)-(8) (defining "sex offense" without any restriction as to when that offense was committed). The Attorney General, in issuing his Interim Rule, merely clarified that SORNA "appl[ies] to all sex offenders." 28 C.F.R. §§ 72.1, 72.3; *see* Applicability of SORNA, 72 Fed.Reg. at 8896 (noting that the legislation "would be far from 'comprehensive'" if it did not include sex offenders convicted before SORNA's enactment) (quoting 42 U.S.C.A. § 16901). Accordingly, Congress did not delegate to the Attorney General the authority to determine whether SORNA applied to persons convicted of sex offenses before July 27, 2006. Rather, the delegation of power by § 16913(d) to the Attorney General "is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with [§ 16913(b)] because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule." *May,* 535 F.3d at 918–19 (internal quotation omitted).

Since Defendant was sentenced to imprisonment but did not register before he was released from prison, he could not comply with § 16913(b). Consequently, § 16913(d) and the Attorney General's subsequent rules and regulations apply to him. Nevertheless, since the Attorney General was only delegated the power to create registration procedures for a narrow population, the provision does not violate the Non–Delegation Doctrine. Congress, in defining the purpose of SORNA as creating a comprehensive national registry to protect the public from sex offenders, provided adequate standards to ensure that the Attorney General would carry out its will. Further, Defendant has not adequately sustained his heavy burden of showing that Congress overstepped its ability to delegate to other branches of Government. Therefore, Defendant's

challenge to SORNA based on the Non–Delegation Doctrine should be denied.

## E. Administrative Procedures Act

Next, Defendant contends that the Attorney General's Interim Rule, issued on February 28, 2007, violated the Administrative Procedures Act in that it was promulgated without the required thirty-day notice and comment period.[15] Further, Defendant argues that the Attorney General's reliance on the "good cause" exception to the notice and comment period was misplaced. The Government indicates that, once again, Defendant lacks standing to make this argument. Defendant's arguments lack merit.

■ The Administrative Procedures Act provides that thirty (30) days prior to the effective date of a rule, publication and service must be effectuated. 5 U.S.C.A. § 553(d) (West 2007). The thirty-day requirement provides for notice and comment by interested persons. 5 U.S.C.A. § 553(c). An agency can, however, dispense with the thirty-day requirement if, for good cause, notice and comment would be "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C.A. § 553(b)(B). The notice and comment requirement could be deemed contrary to the public interest if it impedes timely implementation of a statute as specifically required by that statute. *See American Transfer & Storage Co. v. I.C.C.,* 719 F.2d 1283, 1293–94 (5th Cir.1983) (finding good cause where procedural reforms mandated by statute became effective immediately without a transition period for implementation); *Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877, 882–84 (3d Cir. 1982) (finding good cause where certain amendments became effective by statute

---

**15.** Again, the Court construes this argument as a facial challenge.

on a specific date, shortly after enactment).

As pertaining to SORNA, Congress specified that the purpose of SORNA was to protect the public and to create a comprehensive national system for registering sex offenders. 42 U.S.C.A. § 16901. Further, the Act became effective upon its enactment on July 27, 2006. 109 Pub.L. 248. In the Interim Rule issued by the Attorney General on February 28, 2007, he cited the public interest prong of 5 U.S.C. § 553(b) to excuse bypassing the thirty-day notice and comment period. Applicability of SORNA, 72 Fed.Reg. at 8896–97. Specifically, the Attorney General explained that any "[d]elay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions." *Id.* at 8896.

Here, Congress clearly identified the lack of a *comprehensive* national registry as a public safety hazard. Further, the Attorney General cautioned that delaying implementation of the rule could result in "the commission of additional sexual assaults … that could have been prevented had local authorities and the community been aware of [the sex offenders'] presence." *Id.* at 8896–97. Thus, the Court is of the opinion that the Attorney General's explanation satisfies the public interest prong of the good cause exception. *See Philadelphia Citizens in Action,* 669 F.2d at 884–85 (finding good cause exception where "states would be unable to rely with sufficient assurance on draft regulations or proposed rules while a notice and comment procedure was under way"). Therefore, the Court is of the opinion that Defendant's Motion should be denied based on the Administrative Procedures Act argument.

## F. Tenth Amendment

██ In his fifth constitutional attack, Defendant argues that SORNA encroaches on state sovereignty by conscripting state officials to maintain registration information required by federal, not state, law.[16] The Government responds that SORNA does not violate the Tenth Amendment, because it merely provides financial incentives to implement SORNA. The Court is of the opinion that Defendant's argument fails for lack of standing.

██ The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Under the Tenth Amendment, federal officials cannot conscript or commandeer state officials to administer or enforce a federal regulatory program. *Printz v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Rather, the purpose of the Tenth Amendment is to protect states from encroachment by the federal government. *See Tenn. Elec. Power Co. v. Tenn. Valley Auth.,* 306 U.S. 118, 144, 59 S.Ct. 366, 83 L.Ed. 543 (1939). As the Tenth Amendment protects *state* rights, private citizens lack standing to raise a Tenth Amendment claim. *Id.* (noting that, "absent the states or their officers," private citizens have no standing to raise any question under the Tenth Amendment); *see United States v. Texas Tech Univ.,* 171 F.3d 279, 287 (5th Cir.1999) (rejecting the approach of assuming "hypothetical jurisdiction" used in previous Fifth Circuit opinions that addressed the merits of Tenth Amendment claims raised by private citizens).

In the instant case, Defendant is not an agent of the State of Texas, and the State

---

**16.** The Court construes the instant argument as a facial challenge.

is not raising Tenth Amendment objections to SORNA. Thus, Defendant lacks standing to raise this claim, and, therefore, the Court finds that Defendant's Motion should be denied on this ground.

### G. Indictment

In his final argument, Defendant contends that the Indictment is insufficiently pleaded in that it failed to notify Defendant of the specific conduct giving rise to the instant charges.[17] Defendant further argues that the Indictment lacks sufficient facts, and that the included time frame is so broad and unspecific that Defendant does not know when he is alleged to have committed the instant violation. The Government counters that Defendant, in reality, seeks evidentiary details, as the Indictment provides adequate notice of the charges Defendant faces. The Court finds Defendant's arguments unconvincing.

■■■■■ Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R.CRIM.P. 7(c)(1). An indictment is sufficiently pleaded if: "(1) it contains the elements of the offense charged, (2) it 'fairly informs' the defendant of the charge he must meet, and (3) there is no risk of future prosecutions for the same offense." *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991) (quoting *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986)). An indictment which follows the language of a statute is generally sufficient if the statute includes each essential element of the offense. *Downing v. United States*, 348 F.2d 594, 599 (5th Cir.1965). Nevertheless, a statute employing generic

terms cannot be the basis of an indictment which is framed in the same generic terms. *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). This exception, however, is rarely employed and does not indicate that an indictment must include evidentiary details. *United States v. Williams*, 679 F.2d 504, 508–09 (5th Cir.1982).

■■■ Here, the instant Indictment contains each essential element of a SORNA violation. Specifically, § 2250 states that SORNA is violated when a defendant deemed to be a sex offender as defined by SORNA and based on a prior federal conviction knowingly fails to register as required by SORNA. *See* 18 U.S.C.A. § 2250. The Indictment reiterates these essential elements, stating that Defendant, a sex offender as defined by SORNA, by reason of his conviction under the UCMJ, knowingly failed to register even though he is required to register under SORNA. Not only does the Indictment cite each element, it goes further and includes the underlying offense for which Defendant was required to register. Finally, the time frame stated in the Indictment of October 12, 2007, through March 13, 2008, informs Defendant of the time frame for which he failed to register as a sex offender. Rather than a generic and unspecified time frame, this is the exact time frame for which Defendant is being held responsible for failure to register. In short, the instant Indictment fairly informs Defendant of the charge he must meet, and, given the included time frame, no risk of future prosecution for the instant offense can attach. Thus, the Court finds that the Indictment is sufficiently pleaded, and, there-

---

**17.** Defendant applies the facts of his own case to the instant argument. Consequently, the Court construes this argument as an "as applied" challenge to SORNA. As will be discussed more fully, SORNA applies consti-

tutionally to Defendant's case. Therefore, a facial challenge must fail. *See Robinson,* 119 F.3d at 1214 (rejecting a facial challenge "[b]ecause there are circumstances in which the ... Act operates constitutionally").

fore, the Defendant's Motion should be denied on this ground.

## CONCLUSION

In light of the foregoing, the Court finds that Defendant's Motion should be denied. First, Defendant failed to establish that SORNA is constitutionally infirm. Defendant lacks standing to attack the statute on the basis of the Commerce Clause, the Ex Post Facto Clause, and the Tenth Amendment. Further, Defendant was provided sufficient procedure, could comply with SORNA, and received actual notice of his duty to register such that his Due Process Clause claims fail. Additionally, SORNA provides the Attorney General adequate guidance in promulgating the rules for a narrow class of sex offenders such that the Non–Delegation Doctrine is not violated. Second, the Act does not violate the Administrative Procedures Act, because the Attorney General established good cause to bypass notice and comment requirements. Third, the Indictment in the instant case is sufficiently pleaded. Therefore, the Court is of the opinion that Defendant's Motion to Dismiss Indictment should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Steven Santana–Smith's "Motion To Dismiss Indictment" is **DENIED.**